**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| RAMSEY THOMPSON, | ) | NO. ED CV 12-265-E |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) | **AND ORDER OF REMAND** |
| Defendant. | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on February 29, 2012, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on

1  March 13, 2012.  Plaintiff filed a motion for summary judgment on
2  August 1, 2012.  Defendant filed a cross-motion for summary judgment
3  on August 31, 2012.  The Court has taken the motions under submission
4  without oral argument.  See L.R. 7-15; "Order," filed March 5, 2012.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, a former nurse's aide, asserts disability since February 1, 2004, based on alleged "depression, visual hallucinations, anxiety, psych issues and hyernia [sic]" (Administrative Record ("A.R.") 33, 52, 138, 145, 170).  The Administrative Law Judge ("ALJ") determined that Plaintiff suffers from severe "drug induced psychosis with schizoaffective features," "personality disorder with antisocial features," and a "history of polysubstance dependence up to 2008" (A.R. 12 (adopting medical expert testimony at A.R. 49-50)).  The ALJ found that Plaintiff retains the residual functional capacity to perform work at all exertion levels, limited to "moderately complex tasks up to 4 to 5 steps in an object oriented environment, [no being] in charge of safety operations, and no operating hazardous machinery" (A.R. 13 (adopting medical expert testimony at A.R. 50)).  The ALJ found that, with this capacity, Plaintiff could perform jobs as a hand packager or product assembler, and therefore was not disabled (A.R. 19 (adopting vocational expert testimony at A.R. 53)).  The Appeals Council denied review (A.R. 1-3).

In finding Plaintiff not disabled, the ALJ acknowledged that the consultative examining psychiatrist, Dr. Ernest Bagner III, opined Plaintiff would have, inter alia, "mild to moderate limitations

2

handling normal stresses at work and completing a normal workweek without interruption." See A.R. 16-17 (summarizing Dr. Bagner's evaluations at A.R. 335-38, 439-42). The ALJ did not state explicitly whether the ALJ accepted or rejected Dr. Bagner's opinions regarding these specific limitations. In adopting the medical expert's residual functional capacity opinion, the ALJ stated only that "the consultative examiner found similar limitations" (A.R. 18).

Plaintiff argues that, in determining Plaintiff's residual functional capacity, the ALJ failed to consider properly Dr. Bagner's "mild to moderate" limitations. See Plaintiff's Motion, pp. 3-4. Plaintiff suggests that the ALJ implicitly rejected these limitations without stating sufficient reasons for doing so. Id. Defendant argues that there is no evidence that the ALJ rejected Dr. Bagner's opinions. Defendant's Motion, p. 4. Defendant also argues that Plaintiff has not demonstrated any inconsistency between Dr. Bagner's opinions and the ALJ's residual functional capacity assessment. Id.

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401

1  (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454
2  F.3d 1063, 1067 (9th Cir. 2006).

**DISCUSSION**

The extent to which the ALJ accepted or rejected Dr. Bagner's opinions is unclear. As noted above, the ALJ stated only that Dr. Bagner found limitations "similar" to those the ALJ adopted from the medical expert. See A.R. 18. As discussed below, it is unclear whether Dr. Bagner's limitations are, in fact, "similar" to those the ALJ adopted from the medical expert.

**I.   Summary of Dr. Bagner's Examinations, State Agency Physician Review, and the Medical Expert's Related Testimony.**

Dr. Bagner examined Plaintiff twice. See A.R. 335-38 (April 29, 2009 psychiatric evaluation), A.R. 439-42 (February 23, 2010 psychiatric evaluation). During the April 2009 examination, Plaintiff reported that he quit using methamphetamine two years earlier (A.R. 336). Dr. Bagner diagnosed Plaintiff with a mood disorder, not otherwise specified, and indicated a need to rule out anti-social personality disorder (A.R. 337). Dr. Bagner assigned a GAF score of
///
///
///
///
///
///

71,[1] and opined that Plaintiff: (1) would have no limitations interacting with supervisors, peers, or the public; (2) would have zero to mild limitations maintaining concentration and attention or completing simple tasks; (3) would have mild limitations completing complex tasks; and (4) <u>would have mild to moderate limitations handling normal stresses at work and completing a normal workweek without interruption</u> (A.R. 337-38 (emphasis added)).  Dr. Bagner did not translate these limitations into a residual functional capacity assessment.

During the February 2010 evaluation, Plaintiff reported having a smoking habit, but denied any history of alcohol or illicit drug abuse (A.R. 440; <u>compare</u> A.R. 290, 336 (Plaintiff's reported history of drug use)).  Once again, Dr. Bagner diagnosed Plaintiff with a mood disorder, not otherwise specified (A.R. 441).  Dr. Bagner opined that Plaintiff had the same limitations found in the first evaluation, except that Plaintiff <u>would now have mild to moderate limitations completing complex tasks in addition to the mild to moderate limitations handling normal stresses at work and completing a normal work week without interruption</u> (A.R. 442 (emphasis added)).  Dr. Bagner did not translate these limitations into a residual functional

---

[1]   Clinicians use the GAF scale to report an individual's overall psychological functioning.  The scale does not evaluate impairments caused by physical or environmental factors. <u>See</u> <u>American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders</u> ("DSM-IV-TR") 34 (4th Ed. 2000 (Text Revision)).  A GAF of 71 and 80 indicates that, "[i]f symptoms are present, they are transient and expectable reactions to psycho-social stressors (<u>e.g.</u>, difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (<u>e.g.</u>, temporarily falling behind in schoolwork)."  <u>Id.</u>

capacity assessment. Dr. Bagner predicted that, if Plaintiff continues psychiatric treatment, he should be significantly better in less than six months (A.R. 442).

State agency physician R. E. Brooks, M.D., reviewed the medical record (including Dr. Bagner's April 2009 evaluation) and completed a Psychiatric Review Technique form dated May 20, 2009 (A.R. 339-49). Dr. Brooks opined that Plaintiff would have mild difficulties in maintaining concentration, persistence, or pace, but noted no other limitations (A.R. 347). Dr. Brooks later completed a Mental Residual Functional Capacity Assessment form dated March 11, 2010 (A.R. 443-45). In this form, Dr. Brooks opined that Plaintiff would have <u>moderate</u> limitations in his ability to: (1) understand, remember, and carry out detailed instructions; (2) complete a normal workday or workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and (3) respond appropriately to changes in the work setting (A.R. 443-44).[2] Dr. Brooks translated these limitations – which may have been inclusive of Dr. Bagner's "mild to moderate" limitations handling normal stresses at work, completing complex tasks, and completing a normal workweek without interruption – into the following mental residual functional capacity:

///

---

[2] The two forms Dr. Brooks completed use different measures for limitations. The Psychiatric Review Technique form uses "none," "mild," "moderate," "marked," and "extreme" as possible degrees of limitation. <u>See</u> A.R. 347. The Mental Residual Functional Capacity Assessment form uses "not significantly limited," "moderately limited," and "markedly limited" as possible degrees of limitation. <u>See</u> A.R. 443-44.

6

> Claimant retains the ability to understand, remember, and carry out simple work-related tasks, and has no significant limitations in the ability to sustain concentration/persistence/pace, relate to others, or otherwise adapt to the requirements of the normal workplace.

(A.R. 445).

The medical expert, clinical psychologist Dr. Joseph Malancharuvil, reviewed the record and opined that without drugs and alcohol Plaintiff would have: (1) only mild limitations in his activities of daily living and social functioning; (2) only moderate limitations in his cognitive perception, persistence, or pace; and (3) no actual deterioration in the work setting (A.R. 50). Dr. Malancharuvil testified that Plaintiff would have the following functional capacity:

> The claimant is certainly capable of moderately complex tasks easily up to four to five step instructions, and object oriented work. He is precluded form safety operations because of the reported hallucinations of sensory disturbances, and I also would preclude him from operating hazardous machinery, and that is consistent with the record overall. . . .

(A.R. 50). Dr. Malancharuvil stated that Exhibit 3F, Dr. Bagner's initial evaluation, "talks about mood disorder and antisocial personality disorder with a relatively high GAF of 71," and that

7

Exhibit 9F, Dr. Bagner's second evaluation, was "remarkably the same as the April evaluation," of a "mood disorder with none to mild functional limitations." See A.R. 50-51 (citing A.R. 335-38, 439-42). Dr. Malancharuvil did not mention Dr. Bagner's "mild to moderate" limitations or Dr. Brooks' opinions. Nor did the ALJ inquire of Dr. Malancharuvil regarding these matters. See A.R. 50-51.

**II. The ALJ Did Not Properly Account for the Consultative Psychiatrist's Opinions in Determining Plaintiff's Residual Functional Capacity.**

In determining Plaintiff's residual functional capacity, the ALJ did not state explicitly whether the ALJ was accepting or rejecting the limitations Dr. Bagner found to exist. See A.R. 18 (ALJ's decision). Given the ambiguity in the record regarding whether the medical expert considered Dr. Bagner's "mild to moderate" limitations, the ALJ's omission was error. The ALJ should have expressly considered Dr. Bagner's opinions and explained any bases for rejecting those opinions, or should have clarified with the medical expert whether the residual functional capacity the expert found to exist accounted for Dr. Bagner's "mild to moderate" limitations. See Social Security Ruling 96-6p (ALJs "must explain the weight given" to the opinions of state agency physicians); accord Bain v. Astrue, 319 Fed. App'x 543, 546 (9th Cir. 2009); Sawyer v. Astrue, 303 Fed. App'x

///
///
///
///

8

453, 455 (9th Cir. 2008);[3] see also Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ must provide an explanation when the ALJ rejects "significant probative evidence").

Defendant argues that Plaintiff has not demonstrated that the ALJ's residual functional capacity assessment is inconsistent with Dr. Bagner's findings. See Defendant's Motion, p. 4. Only an expert could competently opine whether the residual functional capacity is consistent with Dr. Bagner's findings.[4] Dr. Malancharuvil's testimony is ambiguous in this regard. The only competent evidence in the record that may shed light on whether the ALJ's residual functional capacity is consistent with Dr. Bagner's findings is Dr. Brooks' March 11, 2010 Mental Residual Functional Capacity Assessment, which the ALJ also did not discuss. See A.R. 443-45 (assessment). Finding some moderate limitations, Dr. Brooks opined that Plaintiff retained the ability to understand, remember, and carry out simple tasks (A.R. 444-45). Dr. Brooks defined a residual functional capacity that is more limited than the assessment of Dr. Malancharuvil, who found Plaintiff capable of performing "moderately complex tasks easily up to four to five step instructions". Compare A.R. 50 (Dr. Malancharuvil's assessment) with A.R. 444-45 (Dr. Brooks' assessment).

///

---

[3] The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

[4] Compare Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ could translate claimant's condition involving mental limitations into concrete residual functional capacity where there existed a basis in the medical record for doing so (i.e., supporting medical opinions)).

On the present record, the Court cannot determine whether the ALJ's error in failing to discuss Dr. Bagner's opinions was harmless. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n ALJ's error is harmless where it is inconsequential to the ultimate non-disability determination.") (citations and quotations omitted). Dr. Bagner stated that Plaintiff would have mild to moderate limitations completing complex tasks, handling normal stresses at work, and completing a normal work week without interruption (A.R. 442). Assuming that Plaintiff could do "moderately complex tasks up to 4 to 5 steps" as the ALJ found, there is insufficient evidence that Plaintiff could do so at a pace necessary to sustain competitive employment. See McAfee v. Astrue, 2009 WL 81400, at *3-4 (C.D. Cal. Jan. 12, 2009) (on remarkably similar facts, finding that Dr. Malancharuvil's restriction to "moderately complex tasks up to four or five instructions in a habituated setting" did not account for Dr. Bagner's "mild to moderate limitations handling normal stresses at work" and "moderate limitations . . . completing a normal workweek without interruption"). The vocational expert did not testify that a person could work with the mild to moderate limitations Dr. Bagner found to exist. See A.R. 52-53 (vocational expert's testimony). The vocational expert did testify that if a person with the limitations the ALJ found to exist were off task 20 percent of the day, the person would not be able to do any jobs in the labor market. See A.R. 53.

///
///
///
///
///

Because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors,[5] remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see generally INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances).

///
///
///
///
///
///
///
///

---

[5] There are outstanding issues that must be resolved before a proper disability determination can be made in the present case. For this reason, the Ninth Circuit's decision in Harman v. Apfel, 211 F.3d 1172 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) ("Harman") also does not compel a reversal for the immediate payment of benefits. In Harman, the Ninth Circuit stated that improperly rejected medical opinion evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Harman at 1178 (citations and quotations omitted). Assuming, arguendo, the Harman holding survives the Supreme Court's decision in INS v. Ventura, the Harman holding does not direct reversal of the present case. It is not clear that the ALJ would be required to find Plaintiff disabled for the entire period of claimed disability if the medical opinions were fully credited. There is no vocational expert evidence concerning whether there exists work that could be performed by a person having the limitations Dr. Bagner and the state agency physicians found to exist.

**CONCLUSION**

For all of the foregoing reasons,[6] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 2, 2012.

```
              _____/S/_____
                        CHARLES F. EICK
                 UNITED STATES MAGISTRATE JUDGE
```

---

[6] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the payment of benefits would not be appropriate at this time.