**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| RAMSEY THOMPSON, | ) | NO. ED CV 12-265-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | **AND ORDER OF REMAND** |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS
HEREBY ORDERED that Plaintiff's and Defendant's motions for summary
judgment are denied and this matter is remanded for further
administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on February 29, 2012, seeking review
of the Commissioner's denial of disability benefits.  The parties
filed a consent to proceed before a United States Magistrate Judge on

March 13, 2012.  Plaintiff filed a motion for summary judgment on
August 1, 2012.  Defendant filed a cross-motion for summary judgment
on August 31, 2012.  The Court has taken the motions under submission
without oral argument.  See L.R. 7-15; "Order," filed March 5, 2012.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, a former nurse's aide, asserts disability since
February 1, 2004, based on alleged "depression, visual hallucinations,
anxiety, psych issues and hyernia [sic]" (Administrative Record
("A.R.") 33, 52, 138, 145, 170).  The Administrative Law Judge ("ALJ")
determined that Plaintiff suffers from severe "drug induced psychosis
with schizoaffective features," "personality disorder with antisocial
features," and a "history of polysubstance dependence up to 2008"
(A.R. 12 (adopting medical expert testimony at A.R. 49-50)).  The ALJ
found that Plaintiff retains the residual functional capacity to
perform work at all exertion levels, limited to "moderately complex
tasks up to 4 to 5 steps in an object oriented environment, [no being]
in charge of safety operations, and no operating hazardous machinery"
(A.R. 13 (adopting medical expert testimony at A.R. 50)).  The ALJ
found that, with this capacity, Plaintiff could perform jobs as a hand
packager or product assembler, and therefore was not disabled (A.R. 19
(adopting vocational expert testimony at A.R. 53)).  The Appeals
Council denied review (A.R. 1-3).

In finding Plaintiff not disabled, the ALJ acknowledged that the
consultative examining psychiatrist, Dr. Ernest Bagner III, opined
Plaintiff would have, inter alia, "mild to moderate limitations

1  handling normal stresses at work and completing a normal workweek

2  without interruption." See A.R. 16-17 (summarizing Dr. Bagner's

3  evaluations at A.R. 335-38, 439-42).   The ALJ did not state explicitly

4  whether the ALJ accepted or rejected Dr. Bagner's opinions regarding

5  these specific limitations.   In adopting the medical expert's residual

6  functional capacity opinion, the ALJ stated only that "the

7  consultative examiner found similar limitations" (A.R. 18).

8

9      Plaintiff argues that, in determining Plaintiff's residual

10  functional capacity, the ALJ failed to consider properly Dr. Bagner's

11  "mild to moderate" limitations.   See Plaintiff's Motion, pp. 3-4.

12  Plaintiff suggests that the ALJ implicitly rejected these limitations

13  without stating sufficient reasons for doing so.   Id.   Defendant

14  argues that there is no evidence that the ALJ rejected Dr. Bagner's

15  opinions.   Defendant's Motion, p. 4.   Defendant also argues that

16  Plaintiff has not demonstrated any inconsistency between Dr. Bagner's

17  opinions and the ALJ's residual functional capacity assessment.   Id.

18

19                          **STANDARD OF REVIEW**

20

21      Under 42 U.S.C. section 405(g), this Court reviews the

22  Administration's decision to determine if: (1) the Administration's

23  findings are supported by substantial evidence; and (2) the

24  Administration used correct legal standards.   See Carmickle v.

25  Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,

26  499 F.3d 1071, 1074 (9th Cir. 2007).   Substantial evidence is "such

27  relevant evidence as a reasonable mind might accept as adequate to

28  support a conclusion." Richardson v. Perales, 402 U.S. 389, 401

1   (1971) (citation and quotations omitted); <u>see</u> <u>Widmark v. Barnhart</u>, 454

2   F.3d 1063, 1067 (9th Cir. 2006).

3

4                            **DISCUSSION**

5

6        The extent to which the ALJ accepted or rejected Dr. Bagner's

7   opinions is unclear.  As noted above, the ALJ stated only that Dr.

8   Bagner found limitations "similar" to those the ALJ adopted from the

9   medical expert.  <u>See</u> A.R. 18.  As discussed below, it is unclear

10  whether Dr. Bagner's limitations are, in fact, "similar" to those the

11  ALJ adopted from the medical expert.

12

13  **I.   <u>Summary of Dr. Bagner's Examinations, State Agency Physician</u>**

14      **<u>Review, and the Medical Expert's Related Testimony.</u>**

15

16       Dr. Bagner examined Plaintiff twice.  <u>See</u> A.R. 335-38 (April 29,

17  2009 psychiatric evaluation), A.R. 439-42 (February 23, 2010

18  psychiatric evaluation).  During the April 2009 examination, Plaintiff

19  reported that he quit using methamphetamine two years earlier (A.R.

20  336).  Dr. Bagner diagnosed Plaintiff with a mood disorder, not

21  otherwise specified, and indicated a need to rule out anti-social

22  personality disorder (A.R. 337).  Dr. Bagner assigned a GAF score of

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

71,[1] and opined that Plaintiff: (1) would have no limitations

interacting with supervisors, peers, or the public; (2) would have

zero to mild limitations maintaining concentration and attention or

completing simple tasks; (3) would have mild limitations completing

complex tasks; and (4) would have mild to moderate limitations

handling normal stresses at work and completing a normal workweek

without interruption (A.R. 337-38 (emphasis added)).  Dr. Bagner did

not translate these limitations into a residual functional capacity

assessment.


     During the February 2010 evaluation, Plaintiff reported having a

smoking habit, but denied any history of alcohol or illicit drug abuse

(A.R. 440; compare A.R. 290, 336 (Plaintiff's reported history of drug

use)).  Once again, Dr. Bagner diagnosed Plaintiff with a mood

disorder, not otherwise specified (A.R. 441).  Dr. Bagner opined that

Plaintiff had the same limitations found in the first evaluation,

except that Plaintiff would now have mild to moderate limitations

completing complex tasks in addition to the mild to moderate

limitations handling normal stresses at work and completing a normal

work week without interruption (A.R. 442 (emphasis added)).  Dr.

Bagner did not translate these limitations into a residual functional

---

     [1]     Clinicians use the GAF scale to report an individual's
overall psychological functioning.  The scale does not evaluate
impairments caused by physical or environmental factors.
See American Psychiatric Association, Diagnostic and Statistical
Manual of Mental Disorders ("DSM-IV-TR") 34 (4th Ed. 2000 (Text
Revision)).  A GAF of 71 and 80 indicates that, "[i]f symptoms
are present, they are transient and expectable reactions to
psycho-social stressors (e.g., difficulty concentrating after
family argument); no more than slight impairment in social,
occupational, or school functioning (e.g., temporarily falling
behind in schoolwork)."  Id.

capacity assessment.  Dr. Bagner predicted that, if Plaintiff
continues psychiatric treatment, he should be significantly better in
less than six months (A.R. 442).


     State agency physician R. E. Brooks, M.D., reviewed the medical
record (including Dr. Bagner's April 2009 evaluation) and completed a
Psychiatric Review Technique form dated May 20, 2009 (A.R. 339-49).
Dr. Brooks opined that Plaintiff would have mild difficulties in
maintaining concentration, persistence, or pace, but noted no other
limitations (A.R. 347).  Dr. Brooks later completed a Mental Residual
Functional Capacity Assessment form dated March 11, 2010 (A.R. 443-
45).  In this form, Dr. Brooks opined that Plaintiff would have
moderate limitations in his ability to: (1) understand, remember, and
carry out detailed instructions; (2) complete a normal workday or
workweek without interruptions from psychologically based symptoms and
perform at a consistent pace without an unreasonable number and length
of rest periods; and (3) respond appropriately to changes in the work
setting (A.R. 443-44).[2]  Dr. Brooks translated these limitations –
which may have been inclusive of Dr. Bagner's "mild to moderate"
limitations handling normal stresses at work, completing complex
tasks, and completing a normal workweek without interruption – into
the following mental residual functional capacity:
///

---

     [2]     The two forms Dr. Brooks completed use different
measures for limitations.  The Psychiatric Review Technique form
uses "none," "mild," "moderate," "marked," and "extreme" as
possible degrees of limitation.  See A.R. 347.  The Mental
Residual Functional Capacity Assessment form uses "not
significantly limited," "moderately limited," and "markedly
limited" as possible degrees of limitation.  See A.R. 443-44.

1       Claimant retains the ability to understand, remember, and

2       carry out simple work-related tasks, and has no significant

3       limitations in the ability to sustain concentration/

4       persistence/pace, relate to others, or otherwise adapt to

5       the requirements of the normal workplace.

6

7 (A.R. 445).

8

9     The medical expert, clinical psychologist Dr. Joseph

10 Malancharuvil, reviewed the record and opined that without drugs and

11 alcohol Plaintiff would have: (1) only mild limitations in his

12 activities of daily living and social functioning; (2) only moderate

13 limitations in his cognitive perception, persistence, or pace; and

14 (3) no actual deterioration in the work setting (A.R. 50).  Dr.

15 Malancharuvil testified that Plaintiff would have the following

16 functional capacity:

17

18       The claimant is certainly capable of moderately complex

19       tasks easily up to four to five step instructions, and

20       object oriented work.  He is precluded form safety

21       operations because of the reported hallucinations of sensory

22       disturbances, and I also would preclude him from operating

23       hazardous machinery, and that is consistent with the record

24       overall. . . .

25

26 (A.R. 50).  Dr. Malancharuvil stated that Exhibit 3F, Dr. Bagner's

27 initial evaluation, "talks about mood disorder and antisocial

28 personality disorder with a relatively high GAF of 71," and that

7

1  Exhibit 9F, Dr. Bagner's second evaluation, was "remarkably the same
2  as the April evaluation," of a "mood disorder with none to mild
3  functional limitations."  See A.R. 50-51 (citing A.R. 335-38, 439-42).
4  Dr. Malancharuvil did <u>not</u> mention Dr. Bagner's "mild to moderate"
5  limitations or Dr. Brooks' opinions.  Nor did the ALJ inquire of Dr.
6  Malancharuvil regarding these matters.  See A.R. 50-51.

7

8  **II.  <u>The ALJ Did Not Properly Account for the Consultative</u>**
9      **<u>Psychiatrist's Opinions in Determining Plaintiff's Residual</u>**
10     **<u>Functional Capacity.</u>**

11

12     In determining Plaintiff's residual functional capacity, the ALJ
13 did not state explicitly whether the ALJ was accepting or rejecting
14 the limitations Dr. Bagner found to exist.  See A.R. 18 (ALJ's
15 decision).  Given the ambiguity in the record regarding whether the
16 medical expert considered Dr. Bagner's "mild to moderate" limitations,
17 the ALJ's omission was error.  The ALJ should have expressly
18 considered Dr. Bagner's opinions and explained any bases for rejecting
19 those opinions, or should have clarified with the medical expert
20 whether the residual functional capacity the expert found to exist
21 accounted for Dr. Bagner's "mild to moderate" limitations.  See Social
22 Security Ruling 96-6p (ALJs "must explain the weight given" to the
23 opinions of state agency physicians); <u>accord</u> <u>Bain v. Astrue</u>, 319 Fed.
24 App'x 543, 546 (9th Cir. 2009); <u>Sawyer v. Astrue</u>, 303 Fed. App'x
25 ///
26 ///
27 ///
28 ///

1  453, 455 (9th Cir. 2008);[3] see also Vincent v. Heckler, 739 F.2d 1393,

2  1394-95 (9th Cir. 1984) (ALJ must provide an explanation when the ALJ

3  rejects "significant probative evidence").

4

5      Defendant argues that Plaintiff has not demonstrated that the

6  ALJ's residual functional capacity assessment is inconsistent with Dr.

7  Bagner's findings.  See Defendant's Motion, p. 4.  Only an expert

8  could competently opine whether the residual functional capacity is

9  consistent with Dr. Bagner's findings.[4]  Dr. Malancharuvil's testimony

10 is ambiguous in this regard.  The only competent evidence in the

11 record that may shed light on whether the ALJ's residual functional

12 capacity is consistent with Dr. Bagner's findings is Dr. Brooks'

13 March 11, 2010 Mental Residual Functional Capacity Assessment, which

14 the ALJ also did not discuss.  See A.R. 443-45 (assessment).  Finding

15 some moderate limitations, Dr. Brooks opined that Plaintiff retained

16 the ability to understand, remember, and carry out simple tasks (A.R.

17 444-45).  Dr. Brooks defined a residual functional capacity that is

18 more limited than the assessment of Dr. Malancharuvil, who found

19 Plaintiff capable of performing "moderately complex tasks easily up to

20 four to five step instructions".  Compare A.R. 50 (Dr. Malancharuvil's

21 assessment) with A.R. 444-45 (Dr. Brooks' assessment).

22 ///

23

24      [3]    The Court may cite unpublished Ninth Circuit opinions
   issued on or after January 1, 2007.  See U.S. Ct. App. 9th Cir.
25 Rule 36-3(b); Fed. R. App. P. 32.1(a).

26      [4]    Compare Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174
   (9th Cir. 2008) (ALJ could translate claimant's condition
27 involving mental limitations into concrete residual functional
   capacity where there existed a basis in the medical record for
28 doing so (i.e., supporting medical opinions)).

On the present record, the Court cannot determine whether the ALJ's error in failing to discuss Dr. Bagner's opinions was harmless. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n ALJ's error is harmless where it is inconsequential to the ultimate non-disability determination.") (citations and quotations omitted). Dr. Bagner stated that Plaintiff would have mild to moderate limitations completing complex tasks, handling normal stresses at work, and completing a normal work week without interruption (A.R. 442). Assuming that Plaintiff could do "moderately complex tasks up to 4 to 5 steps" as the ALJ found, there is insufficient evidence that Plaintiff could do so at a pace necessary to sustain competitive employment. See McAfee v. Astrue, 2009 WL 81400, at *3-4 (C.D. Cal. Jan. 12, 2009) (on remarkably similar facts, finding that Dr. Malancharuvil's restriction to "moderately complex tasks up to four or five instructions in a habituated setting" did not account for Dr. Bagner's "mild to moderate limitations handling normal stresses at work" and "moderate limitations . . . completing a normal workweek without interruption"). The vocational expert did not testify that a person could work with the mild to moderate limitations Dr. Bagner found to exist. See A.R. 52-53 (vocational expert's testimony). The vocational expert did testify that if a person with the limitations the ALJ found to exist were off task 20 percent of the day, the person would not be able to do any jobs in the labor market. See A.R. 53.

///

///

///

///

///

1    Because the circumstances of this case suggest that further

2  administrative review could remedy the ALJ's errors,[5] remand is

3  appropriate.  <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>see</u>

4  <u>generally</u> <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002) (upon reversal of an

5  administrative determination, the proper course is remand for

6  additional agency investigation or explanation, except in rare

7  circumstances).

8  ///

9  ///

10 ///

11 ///

12 ///

13 ///

14 ///

15 _____

16      [5]    There are outstanding issues that must be resolved
   before a proper disability determination can be made in the
17 present case.  For this reason, the Ninth Circuit's decision in
   <u>Harman v. Apfel</u>, 211 F.3d 1172 (9th Cir.), <u>cert. denied</u>, 531 U.S.
18 1038 (2000) ("<u>Harman</u>") also does not compel a reversal for the
   immediate payment of benefits.  In <u>Harman</u>, the Ninth Circuit
19 stated that improperly rejected medical opinion evidence should
   be credited and an immediate award of benefits directed where
20 "(1) the ALJ has failed to provide legally sufficient reasons for
   rejecting such evidence, (2) there are no outstanding issues that
21 must be resolved before a determination of disability can be
   made, and (3) it is clear from the record that the ALJ would be
22 required to find the claimant disabled were such evidence
   credited."  <u>Harman</u> at 1178 (citations and quotations omitted).
23 Assuming, <u>arguendo</u>, the <u>Harman</u> holding survives the Supreme
   Court's decision in <u>INS v. Ventura</u>, the <u>Harman</u> holding does not
24 direct reversal of the present case.  It is not clear that the
   ALJ would be required to find Plaintiff disabled for the entire
25 period of claimed disability if the medical opinions were fully
   credited.  There is no vocational expert evidence concerning
26 whether there exists work that could be performed by a person
   having the limitations Dr. Bagner and the state agency physicians
27 found to exist.

28

**CONCLUSION**

For all of the foregoing reasons,[6] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 2, 2012.


_____/S/_____
                CHARLES F. EICK
        UNITED STATES MAGISTRATE JUDGE

---

[6]    The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the payment of benefits would not be appropriate at this time.